Dekalb County Rehab and Nursing Center On behalf of the F1, Mr. Michael W. Ratzick On behalf of County of Dekalb, Mr. Terence S. Carter Are you both ready to proceed? Yes, ma'am.     Thank you. Thank you. Thank you. Thank you. Thank you. Thank you. Good morning, Your Honors. Good morning. I'm Michael Ratzick. I'm here on behalf of the Plaintiff Appellant, Mr. Sablik. I believe we have a very simple, concise, for-change issue for the Court that I can address, I think, very succinctly. Wonderful. And I know the Court has heard me start this presentation before like that, only to be wrong, but we're looking at Section 2-204. The whole case is premised upon Section 2-204 of the Tort Immunity Act, which provides that a public It's an exemption from liability where a public employee is accused of being liable for the conduct of another public employee. And the cases we've cited show in court it means exactly what it says. If somebody sues a public employee for vicarious liability for the conduct of some other person, then in most instances, Section 2-204 would present the municipal defendant with immunity. But that's not this case. We did not sue an employee for the conduct of another employee. It's simply not a vicarious liability case. We sued the county, the County of DeKalb, for the operation of its nursing home. We sued them under the authority of Section 1-113 of the Nursing Home Act, which specifically provides that nursing homes operated by a county are subject to the Nursing Home Care Act. All right. So the county is relying on the Section 2-113, relying on the Nursing Home Care Act rather than the Tort Immunity Act? The county is relying upon the Tort Immunity Act. The plaintiff sued under the Nursing Home Care Act. So that's the... So here's what you seem to be saying. Section 2-204 of the Tort Immunity Act, which is an issue here, states, except as otherwise provided by statute. Yes, sir. So you're saying that brings an exception immediately into the mixer. It does. And the trial judge didn't think that trumped anything, correct? That's correct. And that's really the rub here. I really have two parallel arguments. That's the broader argument. Actually, that's the first one I made in my brief. As soon as you look at Section 2-4, and it says except as otherwise provided by statute, otherwise provided by statute here is the Nursing Home Care Act. And the Nursing Home Care Act, there's nothing ambiguous about it at all. It says that if you operate a nursing home, you, in fact, have a duty to the residents of the nursing home to provide the proper care, and you are liable for any negligence of any of your employees or servants. So just to make it specific, what you're saying is the Nursing Home Care Act trumps the Tort Immunity Act, including Sections 2-204, making the Nursing Home Care Act applicable here, correct? Yes, sir. Is that the gist of what you're saying? Yes, sir. And are you also indicating in your brief that if Section 2-204 doesn't apply, that Section 2-109 does not apply as well? That's correct, because 2-109 is derivative, I guess, is the word for 2-204. If, in fact, we had sued an employee for the conduct of another employee, and if that employee we sued was not liable, then the nursing home also would not be liable by virtue of 2-109. 2-109 just specifically says that if an employee is not guilty, then is not liable, then the nursing home is not liable. So the introductory language of 2-204 is what you base that on? That's correct. That's correct. And taking it one step further, and that's actually because I sort of started in the middle of it, even if 2-204 is not negated or preempted by the broad language of the Nursing Home Care Act, it still doesn't apply and can't apply because the plaintiff here did not sue an employee for the conduct of another employee. The 2-204 is meant to prevent vicarious liability on the part of an employee for the conduct of another person, and that's not what we have here. We sued the nursing home for its negligence in failing to care for the patient. That's just simply a direct negligence. As a matter of fact, I'm not even sure under the Nursing Home Act that you can actually sue an employee because the Nursing Home Act says it's the nursing home that shall be liable. But the court doesn't have to address that because we did not sue an employee at all. And the defendant, as I understand it in this case, wants to read Section 2-204 to mean that if we've sued a nursing home for the conduct of an employee, somehow 2-204 comes into play for vicarious liability. That's not what 2-204 says. It's not its words. And if you adopted the nursing home's argument, you would in effect be saying we can't sue, no plaintiff can sue a nursing home under the Nursing Home Care Act if the conduct was caused by an employee of the nursing home. That's what's going to happen. It would gut and negate the entire Nursing Home Care Act, and the Nursing Home Care Act, as you can see, is a broad statute. It's meant to level the playing field. It was meant to provide a remedy. The position that the nursing home takes would completely gut that protection because you could never sue a nursing home because their liability is always going to be based upon the conduct of their employee. That's what the court in Lloyd was pointing out, that the court there was simply not going to accept an interpretation of the Tort Immunity Act that would in effect gut the Nursing Home Care Act because the Nursing Home Care Act is such a broad statute. Doesn't Lloyd only illustrate that a county can be held liable under certain circumstances? That is the argument that the county made here. The county points to some language in Lloyd where the court said that the county was liable because its employees had not carried out the directions of a doctor. Literally, in the very next column, the court uses much broader language. In Lloyd or in Lloyd? Literally in Lloyd. In the very next column in Lloyd, at least in the West publication, in the very next column in Lloyd, it uses much more broad language, and I don't know. It also says, it clarifies as it goes maybe three or more paragraphs into the opinion, that the home was liable for negligence in treating and caring for. At that point, it did not limit its holding to situations where a doctor had in fact prescribed care that the nursing home didn't carry out. There's nothing in the Nursing Home Act, however, that limits its effect to circumstances where somebody didn't carry out a doctor's order. It so happens that we allege that here. It's actually in our complaint. It's in the charge. I think it's paragraph 24. I believe it's paragraph M. It's one of the 17 charges against the nursing home that they did not carry out the orders of the doctor. But that should not be the limiting factor because if that was the limiting factor, then you would again gut the Nursing Home Care Act because a doctor doesn't prescribe every act all day long to one of the people who work in the nursing home. A doctor does not usually issue an order that says, you shall turn this patient every X hours or every X days. That's part of the protocol of nurses in a nursing home. They know how to do that. Almost all of these cases that come up arise because the people in the nursing home, the people working in the nursing home, are not caring for the patient properly. They're not turning the patient. Patients get bed sores. They lead to more problems. If you look at all the cases, probably 70% of the cases, or they don't get their medications. The care that the Nursing Home Act covers is very broad. If the court was going to limit the Nursing Home Act to situations where the nursing home had not carried out a specific medical directive from a doctor, there would be very little left of the Nursing Home Care Act. That, unless the Court has further questions, we believe it comes down to a very, very simple question of simply reading 2-204 and carrying it on. Thank you. Okay. Counsel. Good morning. May I please support the counsel? My name is Terry Cardin. I represent the County of DeKalb and the DCRNC. I disagree with counsel's presentation that this comes down solely to 2-204. Judge Waller considered 2-109, 2-204, as well as 3-108 of the Tort Immunity Act. The Tort Immunity Act and the Nursing Home Care Act are different statutory programs, and they both coexist and they both apply to county-owned nursing homes. You're relying primarily, are you not, on Section 2-204 of the Tort Immunity Act? I think that's one of the arguments, Judge, but I think that 3-108 applies just as well. Well, let's start with 2-204 because, to me, it's a little bit perplexing. It starts out saying that except is otherwise provided by statute. So there's an exception immediately in the preparatory language to the section. How do you respond to the argument, it's clear that the legislature's inclusion of this language showed clearly it contemplates the statute can be overwritten by other enactments? Otherwise, what would be the purpose for that language, except is otherwise provided by statute? Well, I think that, Your Honor, the language except is otherwise provided does provide for this coexistence between the two statutory schemes, both the Tort Immunity Act as well as the Nursing Home Care Act. As counsel pointed out, and I agree with him, the Paulson case does acknowledge that 1-113 of the Nursing Home Care Act contemplates a county-owned nursing home being applicable to certain provisions of the Tort Immunity Act. But just like in the Michigan Avenue case that applied to Austin. Well, let's not sidestep it. I want to ask you a pointed question. Does the Nursing Home Care Act trump general provisions of the Tort Immunity Act because of that language except is otherwise provided? I don't believe that. His argument's very simple. Otherwise provided is in the Nursing Home Act. Well, I think that the coexistence of the two statutory schemes provides that there are certain types of claims that are going to be immune from liability based upon provisions of the act. And specifically, what are those? That applies to the facts of this case and the pleadings in this case. It would be turning and repositioning that and the failure to contemplate care plan that provided for turning and repositioning because these are akin to the failure to diagnose because these are provisions that are carried out by the nursing staff and then they direct the CNA staff to carry out these programs. They're saying, you didn't do it. That's their pleading. You didn't do this. And therefore, in the facts of this case, there is an immunity provision that does provide for immunity for the county home. Now, it doesn't provide what the two statutory schemes do not provide for is an out-and-out trumping that, hey, we've alleged this pursuant to the Nursing Home Care Act. Therefore, we don't even get to the Tort Immunity Act. We have to look at them both in the same consideration. And based on the pleadings in this case, Judge Waller considered it and came to the conclusion that the pleadings in this case have a situation which would provide for immunity. So you assume this is the case. I'm sorry. Go ahead. Because it's a failure to diagnose. Yes. Diagnose what? In this case, the necessity for turning and repositioning. So a nursing home can leave somebody in a position indefinitely and never move them, and they're going to say, well, we're not liable because we didn't know there was a problem? That comes down to the specifics of the facts of the case. And I am not advocating for a blanket immunity for all Nursing Home Care Act or allegations against a county-owned nursing home. What I'm advocating is that based upon the facts of the pleadings in this case, that this is one of those cases that falls into immunity. That's what I'm trying to pin. I understand you're saying it's a failure. The injury was caused as a result of a failure to diagnose. How does that apply here? How are you defining failure to diagnose what? They've alleged that the employees of the nursing home did not develop a care plan to address the potential for pressure sores. Isn't that common sense? No, Your Honor, it's not. No, this is something that is the necessity for expert testimony at the time of trial. It is certainly beyond the can of the average juror. As you're sitting there, Your Honor, you may feel that you have a basic understanding of what happens in a nursing home, but I tell you that from my experience, although just being in these facilities all the time, there's a lot that I learn all the time. Okay, so you're saying the diagnosis is to create a care plan. Yes. And so who would have done that? That would have been the nursing staff. They don't work for this county home? Yes, they do. Okay. And so where they're immune, so is the county. Okay, I get your argument. And one thing I do want to stress is that, Your Honor, I can understand your point about the language in 2-204, but, again, I don't think that it's an issue before this court directly, and I don't think that it's – it showed up in the counsel's brief that there's a trumping that seems to be absolute in the argument. And I think that that's very clear, that there is no absolute trumping of one statutory scheme over the other. They both coexist and they both apply. And in this case, it's our position and the position of Judge Waller that there was immunity which did apply and therefore. Because of your book that this was diagnosis. Yes. Unless the court has other questions. You understand your position. Okay. Thank you very much. Counsel, we have an argument of peaceful coexistence here, so tell us why he's wrong about the peaceful coexistence. There can't be a peaceful coexistence when the 2-204 says, except as otherwise provided, and the statute provides otherwise and provides a clear duty to take care. Well, what about the diagnosis issue? In the diagnosis issue, it's not – the complaint doesn't allege a failure to diagnose. Failure to diagnose is normally something a doctor does. The complaint has 17 charges, and there are such things as failing to institute a turning schedule. That's not a diagnosis. It's failing to document treatments, failing to perform daily care, failing to notify the doctor about the changes in her conditions, failing to provide her with nursing measures. The complaint alleges all of those things that a nursing home, through its staff, does for its patients. With respect to one of your complaints, you assert failure to supervise. Did you allege in that willful and wanton conduct? No, we did not. We did not. And actually, I believe that particular reference to supervision is not in one of the charges, unless I've missed it. I think it's in one of the paragraphs leading up to the charges. The charges themselves, 17 charges in paragraph 25, I am wrong, direct themselves to affirmative conduct or affirmative omissions on the part of the nursing staff, not supervision. Unless the Court has further questions, obviously we'd ask that the Court reverse it and ask for a hearing on the merits. Thank you. Thank you. Okay, we are in recess until the next case shortly.